IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RONDA MOORE, for S.N.M., )
a Minor, )
 )
        Plaintiff, )
 )
  v. )          1:12CV328
 )
CAROLYN W. COLVIN, )
Acting Commissioner of Social )
Security,[1] )
 )
        Defendant. )

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

    Plaintiff, Ronda Moore, brought this action on behalf of her minor child, S.N.M., pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Child Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). (Complaint ("Compl.") (Doc. 1).) The court has before it the certified administrative record, and the parties have filed cross-motions for judgment.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

(Doc. 9, 11.) For the reasons that follow, the court will enter judgment for Defendant.

## PROCEDURAL BACKGROUND

Plaintiff applied for SSI on S.N.M.'s behalf on July 11, 2008 (protective filing date). (Tr. 100-08.) After denials initially and upon reconsideration (Tr. 48, 49, 51-54, 58-61), an administrative law judge ("ALJ") concluded, after a hearing, that S.N.M. suffered from severe attention deficit hyperactivity disorder ("ADHD") and a severe learning disability, but that neither of those impairments, either singly or in combination, met, medically equaled, or functionally equaled the severity of any of the conditions covered in the Commissioner's listing of impairments, 20 C.F.R. pt. 404, subpt. P, app. 1 (Tr. 25-34).[2] Accordingly, the ALJ determined that S.N.M. had not been

---

[2] The listing of impairments "describes for each of the major body systems impairments that [the Commissioner] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a). Each listed impairment "specif[ies] the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 416.925(c)(3). The Commissioner will find that an impairment "meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement." Id. An impairment is medically equivalent to a listed impairment when "it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). Functional equivalence, which is the focus of this case, results when an impairment causes "'marked' limitations in two domains of functioning or an 'extreme' limitation in one [such] domain." 20 C.F.R. § 416.926a(a).

"disabled," as defined by the Act, at any time since the date of application, July 11, 2008. (Tr. 34.)

## STANDARD OF REVIEW

In cases such as this one, where the matter was previously adjudicated by an ALJ, review of the ALJ's ruling is limited to the following two issues: (1) whether substantial evidence supports the ALJ's decision; and (2) whether the ALJ applied the correct legal standards. See 42 U.S.C. § 405(g); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The question is not whether Plaintiff is disabled, but whether the ALJ's finding that Plaintiff is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. See Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). If a reasonable mind might accept as adequate the evidence in support of the ALJ's decision, the court should not reweigh the evidence or substitute its judgment for that of the ALJ. Hays, 907 F.2d at 1456.

## DISCUSSION

Plaintiff's sole assignment of error seeks reversal of the ALJ's determination on the ground that the ALJ reached a conclusion unsupported by substantial evidence in connection with the "domain analysis" (i.e., the evaluation of whether

S.N.M. had impairments that, although insufficient to meet or medically equal a listing, functionally equaled a listing). (See Pl.'s Br. Supp. Mot. to Reverse Decision of the Comm'r ("Pl.'s Br.") (Doc. 10) at 3-5.) A child's impairments functionally equal a listing if the child has "'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a).[3] In this context, the regulations identify six domains of functioning: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for [one]self; and (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1).

Here, the ALJ found that S.N.M. had a "marked" limitation in Attending and Completing Tasks, but a "less than marked" limitation in Acquiring and Using Information and Caring for Oneself, as well as no limitation in Interacting and Relating with Others, Moving About and Manipulating Objects, and Health and Physical Well-Being. (See Tr. 29-34.) Plaintiff contends that the ALJ reversibly erred by finding S.N.M.'s limitation in

---

[3] A "marked" limitation "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i) (emphasis added). Plaintiff does not contend that S.N.M. has an "extreme" limitation in any domain. (See Pl.'s Br. (Doc. 10) at 3-5.)

- 4 -

the domain of Acquiring and Using Information "less than marked." (Pl.'s Br. (Doc. 10) at 3-5.) In particular, Plaintiff alleges that the ALJ failed to expressly discuss three pieces of evidence that demonstrate S.N.M. is markedly limited in Acquiring and Using Information: (1) a letter dated October 13, 2008 from S.N.M.'s tutor (Tr. 174); (2) S.N.M.'s first grade report card (Tr. 175); and (3) S.N.M.'s results from the Woodcock-Johnson Test of Academic Achievement III ("WJ-III") administered on April 8, 2009 (Tr. 274). (Pl.'s Br. (Doc. 10) at 3-5.) A careful review of the record confirms that substantial evidence supports the ALJ's decision with respect to the domain of Acquiring and Using Information.

The court finds no error in the ALJ's alleged failure to discuss the three pieces of evidence singled out by Plaintiff, nor does such purported failure render the ALJ's findings in the domain of Acquiring and Using Information unsupported by substantial evidence. The ALJ explicitly discussed the letter in question from S.N.M.'s tutor, noting that the "tutor wrote on October 13, 2008, that she noticed improvement in [S.N.M.'s] ability to concentrate and persevere in homework and studies." (Tr. 29 (citing Tr. 174).) Moreover, in his general discussion of functional equivalence, the ALJ expressly discussed statements from this same tutor made on July 14, 2008, that

S.N.M. "was a motivated and willing student, but had a difficult time staying focused on her work more than a few minutes at a time," that she "frequently fidgeted, changed positions or ran over to another table," and that she "played with rubber bands, pencils, crayons, etc. and frequently interrupted the lesson." (Tr. 26 (citing Tr. 173).) The ALJ also remarked that this tutor "was suspicious [S.N.M.] might have dyslexia." (Id.) Although the ALJ did not explicitly evaluate the tutor's October 13, 2008 statements that S.N.M. was having "difficulty in taking in or retaining new information," that she could know something one minute and not know it the next, that she could spell verbally better than in writing, that she had trouble retaining reading words, and that she confused the letters b and d fairly consistently (Tr. 174), the ALJ clearly considered and discussed both of the tutor's letters, and the substantial evidence test does not require ALJs to discuss each finding in every piece of evidence in the record. Wright v. Astrue, No. 1:09CV0003, 2012 WL 182167, at *5 (M.D.N.C. Jan. 23, 2012) (unpublished) ("Simply stated, there is no requirement that an ALJ discuss each piece of evidence in his decision.") (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) and Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995)).

Regarding S.N.M.'s first grade report card, in his evaluation of S.N.M.'s abilities in Acquiring and Using Information, the ALJ did expressly discuss Exhibit 7E of the administrative record (Tr. 162-78), which contains this report card (Tr. 175). (Tr. 29.) Although the ALJ did not expressly discuss notations on the report card that S.N.M. was having trouble reading, writing and comprehending English and was reading slowly and below grade level (Tr. 175), the ALJ did make the qualitatively similar observation that while S.N.M. was in the first grade at Spanish immersion school, she had "'extremely weak' English language skills in reading and comprehension," quoting from a July 8, 2008 letter written by the principal of the immersion school to S.N.M.'s parents. (Tr. 29; see also Tr. 219.) Thus, Plaintiff fails to show how the outcome of the case would have been favorable had the ALJ explicitly discussed the report card.

Plaintiff is incorrect that the ALJ failed to discuss S.N.M.'s results on the WJ-III test administered by the Epilepsy Center. The ALJ expressly discussed this test, including the fact that S.N.M.'s results indicated that she was "functioning two years below current grade level," in his general discussion of functional equivalence. (Tr. 27.) It is of no moment that the ALJ did not discuss this test in the specific context of

Acquiring and Using Information. Where an ALJ has discussed evidence in one part of his decision, he need not reiterate such evidence at later parts of the decision. See McCartney v. Apfel, 28 Fed. Appx. 277, 279-80 (4th Cir. 2002) (rejecting challenge to ALJ's finding where later discussion in administrative ruling adequately supported finding and stating "that the ALJ need only review medical evidence once in his decision"); Kiernan v. Astrue, Civil Action No. 3:12CV459-HEH, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) (unpublished) (observing that, "[w]here the ALJ analyzes a claimant's medical evidence in one part of his decision, there is no requirement that he rehash that discussion" at a later part of his analysis).

Moreover, substantial evidence supports the ALJ's finding that S.N.M. had a less than marked limitation in Acquiring and Using Information. When evaluating a child claimant's capacity to acquire and use information, an ALJ must consider the "child's ability to learn information and to think about and use the information." Social Security Ruling 09-3p, Title XVI: Determining Childhood Disability – The Functional Equivalence Domain of "Acquiring and Using Information," 2009 WL 396025, at *2 (Feb. 17, 2009) ("SSR 09-3p"); see also 20 C.F.R. § 416.926a(g). The regulations indicate that a school-age

child (aged 6 to 12)[4], such as S.N.M. "should be able to learn to read, write, and do math, and discuss history and science." 20 C.F.R. 416.926a(g)(2)(iv). Further, the child should be able "to use these skills in academic situations to demonstrate what [she has] learned . . . by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions." Id. Similarly, the child should be able "to use these skills in daily living situations at home and in the community (e.g., reading street signs, telling time, and making change)" as well as be able "to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing [her] own ideas, and by understanding and responding to the opinions of others." Id.

In finding S.N.M. had a less than marked limitation in this domain, the ALJ noted that S.N.M. had been placed in a regular classroom for second grade, and that by February 9, 2009, was

---

[4] The ALJ erred by finding that S.N.M. "was a preschooler on July 11, 2008, the date [the] application was filed." (Tr. 25.) The regulations define "preschool children" as "age 3 to attainment of age 6." 20 C.F.R. § 416.926a(g)(2)(iii). S.N.M. was born on January 24, 2001, and thus, she was 7 years old on July 11, 2008, which the regulations define as "school-age." 20 C.F.R. § 416.926a(g)(2)(iv). However, any such error by the ALJ was harmless, as he evaluated S.N.M.'s ability to function under both preschool and school-age standards. (Tr. 28-33.)

reading above her grade level. (Tr. 29; see also Tr. 163.) In addition, the ALJ pointed out that on a teacher questionnaire dated February 9, 2009, S.N.M.'s second grade teacher assessed S.N.M.'s abilities in Acquiring and Using Information and rated S.N.M. as having "no problem" or only a "slight problem" in seven of the ten applicable activities. (Tr. 29; see also Tr. 180.) The teacher found an "obvious problem" in just two activities ("Reading and comprehending written material" and "Recalling and applying previously learned material") and a "serious problem" in just one activity ("Expressing ideas in written form"). (Tr. 180.)[5] The ALJ further observed that on both the Wechsler Intelligence Scale for Children IV ("WISC-IV") and the WJ-III, S.N.M. scored in the average range of cognitive functioning. (Tr. 29.) Finally, as the ALJ correctly remarked, "no treating or nontreating source indicated that either of [S.N.M.'s] impairments, either singly or in combination, caused 'marked' limitations in more than one domain

---

[5] These ratings (even a "serious" rating in one activity) do not mandate a finding of "marked" in Acquiring and Using Information. See Spruill ex rel. J.T. v. Astrue, No. 6:12-CV-6060(MAT), 2013 WL 885739, at *8 (W.D.N.Y. Mar. 8, 2013) (unpublished) (rejecting plaintiff's argument that a "serious" finding in one activity compels a finding of "marked" limitation in Acquiring and Using Information).

of functioning . . . ." (Tr. 27.)[6]  The court thus finds that the ALJ's analysis regarding S.N.M.'s ability to acquire and use information is supported by substantial evidence.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED,** that Plaintiff's Motion to Reverse the Decision of the Commissioner of Social Security (Doc. 9) is **DENIED,** that Defendant's Motion for Judgment on the Pleadings (Doc. 11) is **GRANTED,** and that this action is **DISMISSED.** A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 25th day of June, 2014.

_____
United States District Judge

---

[6] Two state agency consultants each completed a Childhood Disability Evaluation Form. (Tr. 246-51, 280-85.) Both of them found that S.N.M. had less than marked limitation in Acquiring and Using Information, and neither found that S.N.M. had "marked" limitations in at least two domains. (Id.); see also Williams ex rel. R.M. v. Astrue, No. 1:11-cv-2135, 2012 WL 3283427, at *8 (N.D. Ohio Aug. 10, 2012) (unpublished) (describing state agency psychologist's "opinion that the claimant was less than markedly limited in attending and completing tasks . . . [a]s medical expert opinion evidence upon which the ALJ was permitted to rely").